## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL D. LYNCH, | : | CIVIL ACTION NO. 1:23-CV-1167 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| WARDEN THOMPSON, *et al.*, | : | |
| | : | |
| Defendants | : | |

### MEMORANDUM

This is a prisoner civil rights case filed pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). The case is presently before the court on defendants' motion to dismiss, or, alternatively, for summary judgment. After the motion was filed, our court of appeals issued a precedential decision in Fisher v. Hollingsworth, __ F.4th __, No. 22-2846, 2024 WL 3820969 (3d Cir. Aug. 15, 2024), which acknowledges that the Supreme Court's decision in Egbert v. Boule, 596 U.S. 482 (2022), abrogates earlier circuit precedent allowing Bivens claims for defendants' failure to prevent inmate-on-inmate violence. Fisher, 2024 WL 3820969, at *7. Because Lynch's complaint no longer states a viable Bivens claim under Fisher, the court will dismiss his failure to protect, excessive force, and due process claims with prejudice and dismiss his remaining claim for denial of medical care against defendant Siddall without prejudice.

I.    <u>**Procedural History**</u>

Plaintiff, Michael D. Lynch, is currently incarcerated in Big Spring Federal Correctional Institution in Big Spring, Texas, but was incarcerated in Allenwood Low Security Correctional Institution ("LSCI-Allenwood") in Allenwood, Pennsylvania at all relevant times.  He filed his complaint on July 10, 2023, and the court received and docketed it on July 13, 2023.  (Doc. 1).

According to the complaint, Lynch called his friend's mother on the telephone on March 14, 2022, to inform her that her son had been rushed to the hospital because of a medical emergency.  (<u>Id.</u> at 8).[1]  Later that day, at approximately 12:45 p.m., correctional officers at LSCI-Allenwood called Lynch into a lieutenant's office and "interrogated" him about the phone call.  (<u>Id.</u>)  Officials then authored an incident report about the incident and transferred Lynch to the special housing unit ("SHU").  (<u>Id.</u>)

When Lynch arrived in the SHU, defendant Brown, a correctional officer in the prison, allegedly screamed at him, "who the fuck do you think you are, making a phone call like that.  Do you know who Robert Miller was?"  (<u>Id.</u>)  Brown then purportedly told Lynch that Miller was a former coworker of Brown's in the prison who was "ambushed" and killed while escorting a prisoner in the prison.  (<u>Id.</u>)

Following the interaction with Brown, defendant Sierp, another correctional officer in the prison, allegedly placed Lynch in a cell with an inmate named

---

[1] The court cites the complaint using the page numbers that correspond with the court's electronic docket.

Williams.  (Id.)  Williams allegedly stated, "I don't want no white ChoMo . . . in my cell."  (Id.)  The complaint notes that "ChoMo" is a slang term for "child molester." Id.)  Sierp purportedly smiled at Williams's comment and told Lynch, "good luck being in that cell."  (Id.)  When Lynch walked into the cell, Williams allegedly shoved him into the corner of the cell and told him that any food he received "was his."  (Id. at 9).  Williams proceeded to take Lynch's meals away from him for the next week.  (Id.)

On March 20, 2022, Williams allegedly told Lynch that he either had to leave the cell or fight him.  (Id.)  Lynch told defendant Anthony, a correctional officer in the prison, that he believed he was in danger.  (Id.)  Anthony purportedly responded, "too bad, you're not being moved."  (Id.)  Lynch requested to speak with the SHU lieutenant, but his request was denied.  (Id.)

At 10:00 a.m. that day, Williams allegedly assaulted Lynch, repeatedly punching him in the right side of his head and body and causing his head to hit the steel door frame of the cell.  (Id.)  Lynch allegedly suffered injuries and bleeding to his head.  (Id.)  Lynch told Sierp and Greene that he needed medical attention, but they allegedly ignored him.  (Id.)  About an hour after the incident, Lynch again told Greene that he needed help.  (Id.)  Greene then called for backup officers and told the other officers that a "ChoMo had been assaulted."  (Id.)  The officers removed Lynch from the cell and took him to a strip cage where the SHU lieutenant photographed his injuries, and a paramedic gave him medical treatment.  (Id.)  Lynch was then placed in a different cell without a cellmate.  (Id. at 10).

3

On April 14, 2022, defendants Brown and Sierp placed another inmate, Auther, in the cell with Lynch. (Id.)  Both Lynch and Auther were handcuffed as the officers moved Auther into the cell, but Auther allegedly shoved Lynch into the wall and began to yell and scream. (Id.)  Auther then purportedly told the officers that either he or Lynch needed to be moved out of the cell or they were going to "have problems." (Id.)  Greene allegedly responded, "you both are going to live together until you can no longer live together." (Id.)

Immediately after the officers left the cell, Auther began covering up the window of the cell with envelopes to block the officers' view inside the cell. (Id.)  Auther then "yell[ed] and berate[d]" Lynch as Lynch "c[ower]ed in the corner." (Id.)  Auther demanded to speak with the SHU lieutenant, at which point defendants Sierp and Brown came to the cell and told Lynch and Auther to remove the envelopes from the window or he would pepper spray them. (Id.)  Lynch purportedly asked Sierp not to do so, noting that he has chronic obstructive pulmonary disease and asthma. (Id.)  Brown allegedly responded, "that's the ma[g]ic words," opened the door, and pepper sprayed them. (Id. at 10-11).  The officers removed Lynch from the cell and placed him on suicide watch. (Id. at 11).  The SHU lieutenant, defendant Stover, questioned Lynch about the incident and assured him that he would be removed from suicide watch the following day. (Id.)

Defendant Fry, another lieutenant in the prison, escorted Lynch back to the SHU and again placed him in the cell with Auther. (Id.)  Upon arriving in the cell, Lynch had a panic attack, which caused chest pain. (Id.)  Fry placed him back on suicide watch and escorted him away from the cell. (Id.)  While he escorted Lynch,

Fry purportedly stated that he "could not wait to get home and tell his wife this story because she hates ChoMos just as much as me." (Id. (internal commas and apostrophes deleted)). Fry then allegedly told Lynch, "When you return to the SHU on Monday, I'm going to make you my bitch." (Id. (internal comma deleted)).

On April 15, 2022, Lynch received an incident report, which stated that Lynch had attempted suicide by hanging on April 14, 2022, and that Brown had pepper sprayed Lynch to subdue him. (Id.)

The complaint alleges that Lynch told defendant Siddall, a psychologist in the prison, about his "situation" and "assault" but that Siddall refused to help him. (Id.) The complaint asserts that Siddall had the authority to request safe housing for Lynch but that she refused to do so. (Id.) The complaint further states that defendant Thompson, the warden of LSCI-Allenwood, and defendant Kleinfelter, a captain in the prison, ignored his pleas for help. (Id. at 13). Thompson purportedly told Lynch, "[Y]ou'll pack out soon and you can be someone else's problem," while Kleinfelter allegedly stated, "I don't give a fuck; you're not my problem." (Id. at 14).

The complaint names as defendants Thompson, Sierp, Brown, Fry, Siddal, Kleinfelter, Greene, Anthony, Stover, and Hartman, who is identified as an "S.I.S." in the prison. (Id. at 1-6). The complaint asserts that the defendants violated Lynch's civil rights by failing to protect him from the assault by Williams, that Brown violated his civil rights by pepper spraying him, that Sierp and Brown violated his right to due process, and that Siddall violated his civil rights by failing "to provide follow-up care." (Id. at 15-16).

On December 22, 2023, defendants filed a motion to dismiss the complaint or, alternatively, for summary judgment.  (Doc. 13).  On July 29, 2024, the court issued an order stating that the motion would be treated as a motion for summary judgment on the issue of whether Lynch existed administrative remedies.  (Doc. 30). The court additionally announced its intention to act as the finder of fact and resolve any disputed issues of material fact on the issue of exhaustion.  (Id.)

## II.   Legal Standards

### A.   Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests."

Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

Courts must liberally construe complaints brought by *pro se* litigants.  Sause v. Bauer, 585 U.S. 957, 960 (2018).  Pro se complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

### B.    Motion for Summary Judgment

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  Fed. R. Civ. P. 56(a).  The burden of

proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." <u>Thomas v. Cumberland County</u>, 749 F.3d 217, 222 (3d Cir. 2014). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. <u>See</u> <u>Pappas</u>, 331 F. Supp. 2d at 315.

## III.  <u>Discussion</u>

### A.  **Bivens Claims**

Defendants' motion seeks dismissal or summary judgment based on failure to exhaust administrative remedies and several other arguments. Because <u>Fisher</u> calls into the question the viability of Lynch's <u>Bivens</u> claims, however, the court will first consider whether his <u>Bivens</u> claims may proceed because that issue "logically precedes" defendants' other arguments. <u>Fisher</u>, 2024 WL 3820969, at *3.

In <u>Bivens</u>, the Supreme Court recognized an implied damages remedy for a Fourth Amendment violation committed by federal officials, whose conduct was not encompassed by the statutory remedy available against state actors under 42 U.S.C. § 1983. <u>See</u> <u>Bivens</u>, 403 U.S. at 397. In over 50 years since <u>Bivens</u> was decided in June 1971, the Court has extended <u>Bivens</u> only twice: first, to a claim for sex

discrimination under the Fifth Amendment's Due Process Clause, see Davis v. Passman, 442 U.S. 228, 248-49 (1979), and later to a claim for inadequate prison medical care under the Cruel and Unusual Punishment Clause of the Eighth Amendment, see Carlson v. Green, 446 U.S. 14, 18-23 (1980).

The Supreme Court's decision in Ziglar v. Abbasi, 582 U.S. 120 (2017) sets forth a two-part test for determining whether a Bivens claim may proceed. First, courts must ascertain whether the case presents a "new context." Id. at 138. If the case differs "in a meaningful way" from previous Bivens cases decided by the Supreme Court, "then the context is new." Id. at 139. And the meaning of "new context" is "broad." Hernandez v. Mesa, 589 U.S. 93, 102 (2020). Second, if the case presents a new context, the court must then consider whether "special factors" counsel against extending the Bivens remedy. Id. This inquiry asks whether "the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." Egbert, 596 U.S. at 492 (quoting Ziglar, 582 U.S. at 136). If a court concludes that "even a single reason" exists to pause "before applying Bivens in a new context," then special factors counseling hesitation exist and a Bivens remedy does not lie. Id. (quoting Hernandez, 589 U.S. at 102) (internal quotation marks omitted).

The Court's decision in Egbert reemphasizes that the continued refusal to "imply a similar cause of action for other alleged constitutional violations" is intentional and that recognizing a new Bivens cause of action is "a disfavored judicial activity." Egbert, 596 U.S. at 491 (quoting Ziglar, 582 U.S. at 135). Egbert clarifies that the two-step process laid out in Ziglar "often resolve[s] to a single

question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." Id. at 483. In other words: if there is "*any* rational reason (even one) to think that *Congress* is better suited" to determine the propriety of a cause of action, then a Bivens action cannot proceed. Id. at 496. The court must broadly inquire whether "there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate'"—and if the answer is "yes," or even *potentially* yes, the plaintiff cannot recover under Bivens. Id. (quoting United States v. Stanley, 483 U.S. 669, 681 (1987)). Mindful of Egbert's emphasis on the presence of special factors, we proceed with Ziglar's two-step analysis.

### 1. New Context

We liberally construe Lynch's complaint as asserting four Bivens claims: (1) that defendants were deliberately indifferent to the risk of harm to Lynch when they failed to protect him from the assault by Williams; (2) that defendant Brown used excessive force when he pepper-sprayed Lynch; (3) that defendant Siddall violated the Eighth Amendment by failing "to provide follow-up care"; and (4) that defendants Sierp and Brown violated Lynch's due process rights by falsifying misconduct charges against him. (See Doc. 1 at 15-16).

To determine whether a Bivens claim presents a new context, a court must determine whether it "is different in a meaningful way from previous Bivens cases decided" by the Supreme Court. Ziglar, 582 U.S. at 139. Although Ziglar, Hernandez, and Egbert only list Bivens, Davis, and Carlson as cases where the Court has recognized a Bivens claim, until very recently our court of appeals

recognized that plaintiffs could also file <u>Bivens</u> claims alleging that prison officials were deliberately indifferent to the risk that they would be assaulted by other inmates.

The primary decision in this line of cases is <u>Bistrian v. Levi</u>, 912 F.3d 79 (3d Cir. 2018), *abrogated by* <u>Egbert</u>, 596 U.S. at 492, *as recognized in* <u>Fisher</u>, 2024 WL 3820969, at *4-7, which was decided after the Supreme Court's decision in <u>Ziglar</u>, but before the Court's subsequent decisions in <u>Hernandez</u> and <u>Egbert</u>.  In <u>Bistrian</u>, our court of appeals held that the Supreme Court recognized a viable <u>Bivens</u> claim for alleged failure to protect a plaintiff from inmate-on-inmate violence in <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994).  <u>Bistrian</u> acknowledged that <u>Farmer</u> "did not explicitly state that it was recognizing a <u>Bivens</u> claim," but the court held that <u>Farmer</u>'s extensive discussion of the deliberate indifference standard in the context of failure to protect a plaintiff from assault constituted an implicit recognition of a <u>Bivens</u> claim.  <u>Bistrian</u>, 912 F.3d at 90-91.  Although the <u>Bistrian</u> court further noted that <u>Ziglar</u> only listed <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u> as the Supreme Court's past <u>Bivens</u> cases, the court found that it was not appropriate to conclude that <u>Ziglar</u> overruled <u>Farmer</u> "by implication."  <u>Id.</u> at 91.  "It may be," the court continued, that the Supreme Court "simply viewed the failure-to-protect claim as not distinct from the Eighth Amendment deliberate indifference claim in the medical context" that was previously recognized in <u>Carlson</u>.  <u>Id.</u>  Our court of appeals reiterated the continued viability of this type of <u>Bivens</u> claim in <u>Shorter v. United States</u>, 12 F.4th 366, 372-73 (3d Cir. 2021), *abrogated by* <u>Egbert</u>, 596 U.S. at 492, *as recognized in*

Fisher, 2024 WL 3820969, at *4-7, which was decided between the Supreme Court's

Hernandez and Egbert decisions.

The Bistrian line of cases recognizing a Bivens cause of action for failure to

protect a plaintiff from inmate-on-inmate violence remained good law in this circuit

until this month, when our court of appeals issued its decision in Fisher, 2024 WL

3820969, at *4-7.  Fisher holds that the Supreme Court's decision in Egbert

abrogates the contrary holdings in Bistrian and Shorter recognizing a Bivens claim

for failure to protect a plaintiff from inmate-on-inmate violence.  Fisher, 2024 WL

3820969, at *5.  "Egbert," the Fisher court explains, "tightened the Ziglar test and,

in doing so, made a strong statement that lower courts should not extend Bivens

beyond the contexts recognized in Bivens, Davis, and Carlson."  Id. at *4.  Egbert's

"new articulation" of the new context step of the Ziglar test "unequivocally narrows

the universe of relevant cases to just three," i.e., Bivens, Davis, and Carlson.  Id.

Egbert additionally clarified that any cases after Bivens, Davis, and Carlson that

implicitly assume a Bivens remedy "might be available" are inapplicable to the

analysis, and, therefore, "Farmer is out."  Id. (quoting Egbert, 596 U.S. at 498).  "To

sum up," the court concludes, "we read Egbert to require the following: unless a

case is indistinguishable from Bivens, Davis, or Carlson, a damages remedy may be

created by Congress, but not by the courts.  Because Bistrian and Shorter took a

more lenient approach than Egbert, we now recognize their abrogation."  Id. at *5.

Applying the Egbert test to the facts of the case, our court of appeals held that a

claim for deliberate indifference to a risk of assault by another inmate presents a

new context for Bivens.  Id. at *5-6.

Fisher controls our analysis of Lynch's claim that defendants failed to protect him from an assault by Williams. Fisher holds that such a claim presents a new context for Bivens and that Egbert abrogated the contrary holdings in Bistrian and Shorter. Id. at *5-8. Hence, we conclude that this claim presents a new context for Bivens liability.

Lynch's claim that defendant Brown used excessive force in violation of the Eighth Amendment likewise presents a new context for Bivens liability. As our court of appeals recently noted, the Supreme Court "has not recognized an Eighth Amendment [Bivens] claim arising from a correctional officer's use of excessive force against a prisoner." Landis v. Moyer, No. 22-2241, 2024 WL 937070, at *2 (3d Cir. Mar. 5, 2024) (nonprecedential);[2] see also Alsop v. Fed. Bureau of Prisons, No. 22-1933, 2022 WL 16734497, at *3 (3d Cir. Nov. 7, 2022) (nonprecedential) (noting that alleged use of force by correctional officers is "not a basis for relief under Bivens").

Lynch's due process claim against Brown and Sierp also clearly presents a new context for Bivens liability. The most closely analogous case of the Supreme Court's three Bivens cases is Davis, where the Supreme Court recognized the viability of a Bivens claim alleging sex discrimination in violation of the Due Process Clause. See Davis, 442 U.S. at 248-49. As multiple courts in this district have recognized, claims that prison officials have violated a prisoner's due process

---

[2] The court acknowledges that nonprecedential decisions are not binding upon federal district courts. Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

rights are meaningfully different from the due process claim recognized in <u>Davis</u>. <u>See</u>, <u>e.g.</u>, <u>Louis-El v. Ebbert</u>, 448 F. Supp. 3d 428, 439-40 (M.D. Pa. 2020) (Brann, J.); <u>Railey v. Ebbert</u>, 407 F. Supp. 3d 510, 522-23 (M.D. Pa. 2019) (Rambo, J.).

Finally, defendants argue that Lynch's claim that defendant Siddall failed "to provide follow-up care" presents a new context for <u>Bivens</u> liability, (<u>see</u> Doc. 40 at 40-43), but because Lynch has not alleged any facts in support of the claim, the court cannot conclude at this stage that the claim is meaningfully different from the medical care claim recognized in <u>Carlson</u>.  Rather, given the complete absence of allegations in support of the claim, the court will dismiss it without prejudice for failure to state a claim upon which relief may be granted.

## 2.  Special Factors

Having concluded that Lynch's failure to protect, excessive force, and due process claims present new contexts for <u>Bivens</u> liability, we must determine whether "there are any special factors that counsel hesitation" in extending <u>Bivens</u>. <u>Hernandez</u>, 589 U.S. at 102 (internal quotation marks and alterations omitted) (quoting <u>Ziglar</u>, 582 U.S. at 136).  If a court "ha[s] reason to pause before applying <u>Bivens</u> in a new context or to a new class of defendants," then special factors counseling hesitation exist.  <u>Id.</u>

Our special factors analysis is again controlled by <u>Fisher</u>.  In that case, our court of appeals recognized that the BOP's administrative remedy program is a special factor barring extension of the <u>Bivens</u> remedy to new contexts.  <u>Fisher</u>, 2024

WL 3820969, at *7.[3]  We accordingly hold that the administrative remedy program

bars this court from extending <u>Bivens</u> to the new contexts presented by Lynch's

claims.

### B.    Amendment

Before dismissing a civil rights complaint for failure to state a claim upon

which relief may be granted, a district court must permit a curative amendment

unless the amendment would be inequitable or futile.  <u>Phillips</u>, 515 F.3d at 245.  We

will deny leave to amend as futile with respect to Lynch's failure to protect,

excessive force, and due process claims because those claims fail as a matter of law,

but we will grant leave to amend with respect to Lynch's claim that defendant

Siddall violated the Eighth Amendment by failing "to provide follow-up care"

because we cannot conclude that this claim fails as a matter of law at this stage of

litigation.

### IV.    <u>Conclusion</u>

We will grant defendants' motion to dismiss, dismiss Lynch's failure to

protect, excessive force, and due process claims with prejudice, dismiss the

deficient medical care claim against defendant Siddall without prejudice, and

---

[3] Our court of appeals states that this holding "track[s] the Supreme Court's holding in <u>Egbert</u> that an agency's grievance process is a special factor foreclosing <u>Bivens</u> relief," and therefore abrogates the contrary holding in <u>Bistrian</u> that the BOP's administrative remedy program is not an adequate alternative remedy for a <u>Bivens</u> claim.  <u>See</u> <u>Fisher</u>, 2024 WL 3820969, at *7.

terminate all defendants other than Siddall from the docket of this case.  An

appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:      August 22, 2024