IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

FILED
HARRISBURG, PA
MAY 28 2025
PER _____ /s/ M.A.
DEPUTY CLERK

MICHAEL LYNCH,
    Plaintiff,

v.

WARDEN THOMSON, et al.,
    Defendants.

Case No. 1:23-cv-1167

Honorable Judge Neary

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

NOW COMES the **pro se** plaintiff Michael Lynch (Lynch) in response to Defendant Dr. Eryn Siddall's (Defendant) motion to dismiss and/or for summary judgment, docket entry (D.E.) 43. In support thereof, Lynch states as follows:

## INTRODUCTION

Lynch would begin by complimenting the Court on its August 22, 2024, Memorandum Opinion, D.E. 32. The Court did an excellent job of distilling Lynch's original rambling complaint into a comprehensible summary of Lynch's complaint. Lynch has subsequently recruited another inmate to assist him in preparing his pleadings. Hopefully, this will make the Court's job easy in the future. However, even with this assistance, Lynch is still very much a **pro se** plaintiff and would ask the Court to continue to construe his pleadings liberally. See e.g., **Mala v. Crown Bay Marina, Inc.**, 704 F.3d 239, 244-46 (3rd Cir. 2013).

(1.)

I.) EXHAUSTION

Defendant argues the amended complaint "should be dismissed or, alternatively, summary judgment should be entered in Dr. Siddall's favor because [in Defendant's opinion] Lynch failed to satisfy the Prison Litigation Reform Act (PLRA) requirement of exhausting his administrative remedies before commencing this lawsuit." D.E. 43 at 2.

In the plethora of cases cited by the Defendant there is one case that should control the Court's decision concerning the issue of exhaustion. Specifically, in **Rinaldi v. United States**, 904 F.3d 257 (3rd Cir. 2018), the Third Circuit held:

> "The PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available.' **Woodford**, 548 U.S. at 93. In its decision in **Ross v. Blake**, the Supreme Court identified 'three kinds of circumstances in which an administrative remedy, although officially on the books,' it is not 'available' because it is 'not capable of use to obtain relief': (1) when 'it operates as a simple dead end - with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administration thwart inmates from taking advantage of a grievance process through machinations, misrepresentation, or intimidation.' 136 S.Ct. 1850, 1859-60, 195 L.Ed.2d 117 (2016)." **Rinaldi**, 904 F.3d at 267.

(2.)

As Lynch stated in his "Procedural History" to one of his prior pleadings, a copy of which is attached hereto as Exhibit #1:

> "Also is included are copies of my attempt at administrative remedies. BP-8's and 9's (sic) were filed with staff, however, **I received no response**, and per B.O.P. rules and regulations, after the expired period while waiting for a response, I proceeded to the next level Administrative Remedy complaint.
> Ultimately, I exhausted the administrative remedy process, **and found myself discriminated [against], ignored, and no responses given to my BP forms.** This was complicated by Allenwood's incompetent system of operation, disorganization of counselor's (sic) and the BP's (sic) that are submitted by inmates, and the B.O.P. and it's (sic) facilities, in accountability to ensure that staff is performing at a functional & exceptional level." Ex. 1 at pg. 1, ¶ 2 - 3 (emphasis added).

Lynch went on to state he "was in a cell with no access to paper, pen, or the correct forms that [Lynch] requested but never received." Id. at pg. 3, ¶ 2.

Defendant cannot hide behind the PLRA when the administrative remedy process was made unavailable to Lynch by "officers unable or consistently unwilling to provide" the forms that are required to file an administrative remedy. **Rinaldi**, supra.

Likewise, there can be no doubt that Lynch was subjected to "machinations, misrepresentation, or intimidation" when he attempted to file his greivances. In fact, he was subjected to

(3.)

machinations, misrepresentation, and intimidation. Thus, Lynch did everything that could be expected of him under the circumstances.

Lest there be any doubt, in Lynch's Administrative Remedy Appeal No. 1151355-R1, Lynch stated, "I filed a BP8 and BP9 to which were not responded to[.]" Yet, when Lynch filed a BP10, Region rejected the appeal because Lynch did not provide a copy of the BP9 that he filed. However, this ignores the fact that Lynch could not provide a copy of the BP9 because the BP9 was never returned to him.

Defendant also cites "Lynch's Administrative Remedy Generalized Retrival" printout to claim Lynch "filed 12 administrative remedies since March 2022, when the events alleged in his Amended Complaint began." D.E. 43 at 9. This is not accurate. Once Lynch gives the remedy to BOP staff he has no control over what the staff member does with the remedy request. For all Lynch knows, staff may have shredded some of his remedies without entering them into the computer system.

If Defendant is going to rely on this BOP generated report, then the BOP needs to issue a receipt at the time that an inmate submits the remedy so the inmate has proof that the remedy was given to the staff member. Without the issuance of a receipt, there is no guarantee the remedy was properly processed instead of being thrown in the nearest trash can. This is especially true in a case like this one where the inmate is alleging staff misconduct.

(4.)

Because Lynch exhausted all "available" administrative remedies before he initiated this suit, the Court should reject Defendant's argument that Lynch failed to exhaust the remedy process.

II.) SUMMARY JUDGMENT

Summary judgment should only be granted when "there is no genuine dispute as to any material fact and movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). The moving party bears the burden to "demonstrate the absence of a genuine issue of material fact," relying on pleadings, depositions, affidavits, and other evidence that is in the record. **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Even then, the Court "must view the facts in the light most favorable to the non-moving party." **Hugh v. Butler County Family YMCA**, 418 F.3d 265, 267 (3rd Cir. 2005).

In order to sustain an Eighth Amendment deliberate indifference claim, "a plaintiff must make (1) a subjective showing that the defendants were deliberately indifferent to his or her medical needs and (2) an objective showing that those needs were serious." **Pearson v. Prison Health Service**, 850 F.3d 526, 534 (3rd Cir. 2017).

Defendant alleges Lynch's "conclusory allegations fall short of stating a claim, constituting nothing more than unadorned, the-defendant-unlawfully-harmed-me accusations, labels and conclusions, and a formulaic recitation of the elements...At most, Lynch's claim amounts to mere disagreement at the treatment provided." D.E. 43 at ECF 25-26 (cleaned up).

"A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) **a short and plain statement** of the claim showing that the pleader is entitled to relief; and (3) a demand for relief sought, which may include relief in alternative or different types of relief." Federal Rule of Civil Procedure 8(a) (emphasis added).

Contrary to Defendant's assertion, Lynch's Amended Complaint, D.E. 34, specifically declares he is suffering from "depression, anxiety, and Post Traumatic Stress Disorder" as a direct result of Defendant's refusal to acknowledge, much less treat, Lynch's mental health needs. Indeed, this Court has already acknowledged Lynch claimed "defendant Siddall violated the Eighth Amendment by failing 'to provide follow-up care'" after placing Lynch on suicide watch twice. D.E. 34 at 15 (citing D.E. 1).

Not only did Defendant fail to provide "follow-up care," whatever Defendant put in Lynch's BOP file has resulted in Lynch not receiving mental health care even after he was transferred from LSCI-Allenwood. Lynch requested mental health treatment at both FCI-Big Spring and FCI-Thomson. See Exhibit 2. Yet, to this day, Lynch has not received any help. As a result, Lynch is forced to live with the trauma he endured due to Defendant's deliberate indifference to his serious medical needs.

(6.)

Finally, Defendant's claim that the "Court should dimiss or enter judgment in Defendant's favor because Lynch's Amended Complaint fails to allege a physical injury as required by the PLRA, 42 U.S.C. § 1997e(e)." D.E. 43 at 16. Again, this is not accurate.

Defendant does not contest that Lynch was physically assaulted, **twice**. Instead, Defendant claims she is immune from suit because she did not personally assault Lynch. However, failing to protect an inmate from a known threat is actionable even if the Defendant did nothing more than ignore the threat. See e.g., **Hamilton v. Leavy**, 117 F.3d 742, 746 (3rd Cir. 1997)(citing **Farmer v. Brennan**, 511 U.S. 825, 834 (1994)).

Lynch specifically asserted Defendant's refusal to intercede on his behalf precipitated the physical assaults that he suffered. See Exhibit #1 at 11 -- "Dr. Siddall,was told repeatedly by me, of my siuation, and assault, but refused to help me! She is a doctor, and in authority to request safe housing for me, but she refused[.]" Thus, not only did Defendant's deliberate indifference result in Lynch's ongoing mental health crisis, Defendant was responsible for failing to prevent the assaults that Lynch warned her would happen if she did not help him. As a result, Defendant is liable for Lynch's injuries the same as if she had physically assaulted Lynch herself. "Because Plaintiff suffered harm as a result, there is a question of fact as to whether Defendant [Sidall's] actions - or faliure to act - caused Plaintiff's injury." **Luster v. Pima County**, case no. CV-22-00519, 2024 U.S. Dist. LEXIS 193989, at *17 (D. AZ. September 27, 2024).

Further, despite the limitations imposed by § 1997e(e), the Third Circuit has recognized a prisoner can, even absent a showing of physical injury, pursue punitive and nominal damages based upon a violation of his constitutional rights. See e.g., **Mithcell v. Horn**, 318 F.3d 522, 533 (3rd Cir. 2002)("regardless of how we construe § 1997e(e)'s physical injury requirement, it will not affect Mitchell's ability to seek nominal and punitive damages for violations of his constitutional rights.") When a prisoner is experiencing a mental health crisis, he or she has a constitutional right to treatment and that treatment must include more than placing the inmate in a rubber suit on suicide watch.

### III.) AFFIDAVIT OF MICHAEL LYNCH

The pro se plaintiff, Michael Lynch, hereby certifies under the penalty of perjury that he has fully reviewed this pleading and that all facts contained herein are true and correct to the best of his knowledge and recollection.

## CONCLUSION

WHEREFORE, the pro se plaintiff, Michael Lynch, hereby moves the Honorable Court to deny Defendant's Motion to Dismiss and/or for Summary Judgment, D.E. 43, for the reasons stated above or to grant any other such relief the Court deems just and proper.

Respectfully submitted this 15th day of May 2025 by:

*/s/ Michael Lynch*
Michael Lynch # 76039-004
Federal Correctional Institution
P.O. Box 1002
Thomson, Illinois 61285

## CERTIFICATE OF SERVICE

The pro se plaintiff, Michael Lynch, hereby certifies under the penalty of perjury that he served a true and correct copy of this pleading on Defendant's attorney by placing said copy in a first-class postage prepaid envelope addressed to the clerk of the court for electronic filing and notification and depositing same in the "legal mail" system at FCI-Thomson on this 15th day of May 2025.